Upper Lakes Shipping Ltd., a Canadian Corporation, Plaintiff-Appellee, and Canadian Maritime Union, Intervenor-Appellee, v. Seafarers' International Union of Canada, et al., Defendants, and District 2, Marine Engineers' Beneficial Association, Defendant-Appellant.

Gen. No. 48,871.

First District, Third Division.

March 13, 1963.

394

Greenberger & Krauss, of Chicago (Ernest Greenberger and Hyman J. Krauss, of counsel), for appellant.

Devoe, Shadur, Mikva & Plotkin, of Chicago (Robert Plotkin and Neil H. Adelman, of counsel), for intervenor-appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This is an interlocutory appeal by District 2, Marine Engineers' Beneficial Association, from an order denying its motion to dissolve a temporary injunction. A threshold question is the appellant's right to appeal.

The injunction, as first granted on May 15, 1962, was against four unions, seven officers of these unions and others, individually and as officers, members and agents of the unions. The defendants were restrained from picketing the ships of the plaintiff, Upper Lakes Shipping Ltd., a Canadian corporation, whose ships are registered under the laws of Canada and fly the Canadian flag.

The complaint upon which the injunction was based alleged that one of these ships, the John Ericsson, sailed from Ontario, Canada, to the Port of Chicago to take on a load of grain from the elevator of the Continental Grain Company, for the purpose of transporting it in international trade and commerce. Its crew consisted of 9 officers and 22 men. All of the latter were members of the Canadian Maritime Union. The plaintiff had a contract recognizing this union as the sole bargaining agent for the employees. A copy of the contract was on file with the Department of Labour of Canada as required by Canadian law.

The complaint further alleged that at 9:00 a. m. on May 15, 1962, at the entrance to the Calumet River, the John Ericsson was met by a tugboat which was to accompany it up the river to the dock of the Continental Grain Company. At this juncture pickets appeared on another boat, bearing placards saying that the Seafarers' International Union of Canada had been locked out by the SS John Ericsson. Thereupon the tugboat's crew caused it to withdraw and the ship had to proceed as best it could to the grain company's dock. There the picketing was renewed and because of this the employees of the grain company refused to load the ship.

The complaint stated that there was no labor dispute between the plaintiff and its employees. It charged that the only dispute was between two Canadian unions, that the lock-out signs were false, that the purpose of the picketing was unlawful and was to coerce the plaintiff to break its agreement with the Canadian Maritime Union and to employ members of the picketing union; that continued picketing would result in closing the Port of Chicago to its ships, the breach of its contract with the grain company and the ultimate cancellation of that contract which was to haul four million bushels of grain during the 1962 shipping season.

On May 31, 1962, the plaintiff moved to amend its complaint, to add additional parties defendant and to broaden the writ of injunction. The motions were allowed. Seven unions were made defendants in addition to those appearing in the caption of this case. They, "their agents and employees and all those who shall participate in their behalf" were enjoined. The amended complaint charged that since the issuance of the injunction 16 days earlier, other parties had picketed the plaintiff's ships or had caused them to be picketed on behalf of the original defendants. One affidavit accompanying the motions stated that the

ship Howard Shaw was being picketed that very day by the International Longshoremen's Association and that because of this the employees of the Continental Grain Company were again refusing to cooperate in the loading of the ship. Another affidavit stated that at other ports on the Great Lakes various ships of the plaintiff had been picketed during the early 1962 season. The affidavit delineated the picketing pattern. The first picketing would be done by the Seafarers' International Union of Canada; upon its being enjoined, another union would take up the picketing, then another and another. Among these picketing unions was one of the seven new defendants, the Marine Engineers' Beneficial Association. The amended complaint stated that this association "maintains an office in Cook County, Illinois at 9383 Ewing Avenue, Chicago."

On the 4th of June District 2, Maritime Engineers' Beneficial Association, whose office was at this address, entered a special appearance for the purpose of contesting the court's jurisdiction, moved to dismiss the amended complaint and to vacate the temporary injunction. This motion was heard on June 11th and during the hearing the following colloquy took place between its attorney and the attorney representing the Canadian Maritime Union, which had asked leave to intervene:

> Counsel for intervenor: "First of all, I should like to ask this question so that the record is clear. The order you entered on the 31st of May runs against, among others, the Marine Engineers Beneficial Association. I have noticed that the petition that counsel has filed and has argued concerning this morning has been filed by District 2 of that Association. And I think that before we go further we should straighten this matter out to find out who it is that counsel is representing."

Counsel for appellant: "I will be glad to answer your question. The injunction order of this Court is certainly broad and sweeping enough to encompass District 2, Marine Engineers Beneficial Association, which is the only organization which maintains an office in the State of Illinois and which, in our opinion, is affected or bound by this Court's order. Therefore, regardless of the wording of this Court's order, we believe that the interest of District 2 is sufficient here to warrant an appearance, a special appearance on its part and a motion to vacate this order."

"It is as simple as that, your Honor."

Counsel for intervenor: "Are you, also, expressly appearing on behalf of the Association itself?"

Counsel for appellant: "No sir, I am not appearing on behalf of anyone except District 2, Marine Engineers Beneficial Association."

Counsel for intervenor: "I thought we should clear that up, at least, and find out who it is that is interested in this matter this afternoon."

Nothing further was said on this subject, the argument proceeded and upon its conclusion the chancellor denied the motions. The appellant filed its notice of appeal shortly thereafter.

After the appeal was perfected, it was discovered that the appellant was not an adjunct of the party against whom the injunction had issued. This came about in the following fashion: the summons and the writ of injunction had been served on the Marine Engineers' Beneficial Association in New York. Subsequent to the present appeal it filed a special appearance for the purpose of objecting to the court's jurisdiction and moved to quash the service of summons and the writ because it was not in any way sub-

ject to the jurisdiction of the courts of this State. An affidavit of its secretary stated that it had no office, transacted no business, and had no agents or representatives in the State who were authorized to conduct business in its behalf, that local unions were affiliated with it but that they were fully autonomous.

After the motion and affidavit were filed in the trial court, the appellee moved to dismiss this appeal and we took the motion with the case. Because we believe the motion is well founded we do not reach the other issues raised in the appeal.

■ The affidavit made it clear that the Marine Engineers' Beneficial Association and District 2, Marine Engineers' Beneficial Association were separate entities. The distinction between them was again brought out in the oral argument in this court by the responses of the appellant's counsel to the interrogation of the court. It was made clear to us that District 2 is a completely autonomous union; its affiliation with the parent union is no stronger than that of any local union with its parent, the national AFL-CIO.

The appellant was not named as a defendant in either the original or amended complaint, it was not served with process or with the writ of injunction and it was not granted leave to intervene. Despite this, the appellant contends that it is a party to the record because (a) its address was used in the amended complaint, (b) its motion to vacate was filed without objection, (c) its affidavit in support of the motion was filed with the court's permission, (d) its identity was clarified in court and thereafter it argued its motion without objection, (e) it was this motion which was deemed and (f) its appeal bond was approved by the court.

■ The failure to object to one's participation in a case does not necessarily make that one a party. In Slusarz v. Slusarz, 18 Ill App2d 25, 151 NE2d 411, a party was allowed to intervene in a case by assert-

ing an interest which, it was later learned, did not exist. Although the interest was not questioned by the original parties or the trial court, the question was considered on appeal where it was held that the intervenor's interest in the subject matter was insufficient to sustain intervention. The case was reversed for this sole reason.

 Under some circumstances, however, an appellee, by allegations made in its pleadings, or by other conduct constituting an admission of interest or waiver of objection, may be estopped from denying that an appellant has an insufficient interest to entitle it to prosecute an appeal, 4 CJS, Appeal and Error, sec 179. The doctrine does not appear to be well established nor should it be imposed unless the facts clearly indicate that estoppel is warranted. The facts in the present case are not of the character to invoke estoppel. The address of the appellant in the amended complaint was a mistake; service was not attempted at that address but was had upon the named defendant in New York. The appellant filed only a special appearance, it questioned the court's jurisdiction and it filed no answer or other pleading binding it as a litigant to the subject matter or the outcome of the litigation. Its only participation in the proceedings was to file and argue a motion to vacate a previous order of the court and to file a motion to strike part of an affidavit submitted by the plaintiff. It was not a party to the litigation, did not become a party and was not recognized as a party. It was assumed that it was so closely affiliated with the named party as to make it amenable to the injunction. The affidavit filed by the parent organization dispelled this assumption. After learning the truth, it was too late for the appellee to file an appropriate motion in the trial court because the interlocutory appeal had been taken and jurisdiction had vested in this court.

■ ■ Prior to the enactment of the Civil Practice Act one who was not a party to an action had no statutory right of appeal. He could, however, prosecute a writ of error if he showed that he was a privy to the record, or would be injured by the judgment order or decree which he sought to have reviewed, or if he showed that he would benefit from its reversal or if he was competent to release errors. City of Alton v. County Court of St. Charles County, Missouri, 16 Ill2d 23, 156 NE2d 531; Nott v. Wolff, 18 Ill2d 362, 163 NE2d 809. The Civil Practice Act provides: "The right heretofore possessed by any person not a party to the record to review a judgment or decree by writ of error is preserved by notice of appeal." Ill Rev Stats (1961), c 110, § 74(1). Since the appellant is not a party to the record it has the right to take this appeal only if it would have been able, absent the statute, to prosecute a writ of error.

■ It cannot be said that the appellant is in any way a privy to the record. The word "privity" has been defined as follows:

> " 'Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The word "privy" includes those who control an action although not parties to it; those whose interests are represented by a party to the action; successors in interest to those having derivative claims.' Restatement of Judgments, § 83, Comment a." Smith v. Bishop, 26 Ill2d 434, 187 NE2d 217.

In Keith v. Thayer, 181 Ill App 370, the word "privity" was said to denote "mutual or successive relationship to the same rights of property." In McIntyre

v. Sholty, 139 Ill 171, 29 NE 43, the court said, "there are privies in blood, as the heir is to the ancestor; privies in representation, as is the executor or administrator to the deceased; privies in estate, as lessor and lessee, etc." A similar definition was given in White Brass Castings Co. v. Union Metal Mfg. Co., 232 Ill 165, 83 NE 540: "By privies, within the meaning of the rule, are meant heirs, executors, administrators, terre-tenants, or those having an interest in remainder or reversion, or one who is made a party by the law."

Since the appellant is neither a party nor a privy to the record and is not competent to release errors, would it be injured by the order granting the injunction or would it be benefited from its reversal? The interest, by one who is not a party, must be direct, immediate and substantial, and this interest must appear in the record or be alleged in the points relied upon for reversal so as to show its relationship to the suit. Leland v. Leland, 319 Ill 426, 150 NE 270; People v. Estate of Harrigan, 294 Ill 171, 128 NE 334.

Considering the affidavit of the Marine Engineers' Beneficial Association and the statements in our court during oral argument, it is clear that District 2 does not have any direct interest in the order it seeks to reverse. It is not prejudiced by the injunction order and neither it, nor its members as such, would be injured by its enforcement. If any attempt is made to enforce the injunction against it, it can defend on the ground that it is an entity separate and distinct from any named defendant. If it participates in the picketing or other acts prohibited by the court, it would be subject to the injunction, not because its name is similar to a party enjoined and not because it is one with a party enjoined, but only if the participation is done as agent of or in behalf of a party enjoined. Furthermore, it would benefit no more by the reversal of the order than

402

would any other union, sympathetic to the purposes of the picketing, but not a party to these proceedings. The motion to dismiss the appeal will be granted.

Appeal dismissed.

SCHWARTZ and McCORMICK, JJ., concur.